UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSH NORRIS, ET AL.                          CIVIL ACTION

VERSUS                                       NO: 14-1598

GARRY CAUSEY, ET AL.                         SECTION: "J" (4)


## ORDER AND REASONS

Before the Court are a *Motion for Attorneys' Fees* (**Rec. Doc. 58**) and a *Motion for a Partial New Trial* (**Rec. Doc. 59**) filed by Plaintiffs, John and Jill Norris, an *Opposition* thereto (**Rec. Doc. 60**) filed by Defendant, Karry Causey, and a *Reply* (**Rec. Doc. 64**) filed by Plaintiffs. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the Motion for Attorneys' Fees should be **GRANTED** and the Motion for a Partial New Trial should be **GRANTED in part and DENIED in part**.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

Plaintiffs Josh and Jill Norris are residents of the state of Michigan. After Hurricane Katrina in 2005, Mr. Norris, a licensed plumber, traveled to New Orleans to seek work. In April 2007, Plaintiffs met Defendant, Karry Causey, and his brother, Garry Causey. The Causeys proposed an investment to Plaintiffs, in which

1

Plaintiffs would supply funds to purchase hurricane-damaged properties in New Orleans. The Causeys would then renovate the properties and sell them for a profit. The parties agreed to share the profits of their venture equally. In furtherance of this agreement, Garry Causey drafted a Joint Venture Agreement. Plaintiffs signed the agreement and returned it to Garry Causey. Defendant did not sign the agreement.

The Causeys recommended a property at 5103 Music Street ("the Music Street property") for their first renovation. Garry Causey was the owner of this property. On June 14, 2007, Plaintiffs delivered a check for $48,000 payable to Garry Causey for the renovations of the Music Street property. Garry Causey deposited the check on June 19. Karry Causey then instructed Plaintiffs to pay for architectural plans for the property from a specific company. Plaintiffs allege that they spent $1,000 on the plans. Next, the Causeys approached Plaintiffs about another property located at 4767 Marigny Street ("the Marigny Street property"). Plaintiffs wrote Garry Causey a check for $45,000 for construction on the Marigny Street property. Garry Causey deposited the check on August 7, 2007. Plaintiffs made the initial $93,000 in payments using their equity line of credit.

Despite Plaintiffs providing funds for the projects, the Causeys failed to move forward on the renovations. According to

Plaintiffs, the Causeys told them that Garry Causey was unable to acquire additional funding for construction and materials. In the meantime, Plaintiffs had to pay monthly finance charges on their line of credit. The Causeys agreed to make monthly payments to Plaintiffs, but they stopped making payments after a few months.

In 2009, Garry Causey transferred his 50% interest in the Marigny Street property to Mark Anthony Holdings. Plaintiffs contend that Garry Causey is "involved" with this entity. Further, Mark Anthony Holdings owned the other 50% interest in the property, which it sold to Turn Our Lights on X, an entity in which Karry Causey was involved. In 2014, the two entities constructed a residence on the property and sold it for a profit. The entities did not share the profit with Plaintiffs.

On July 10, 2014, Plaintiffs filed suit against Karry and Garry Causey for rescission of the joint venture agreement and asking for a judgment holding Defendants liable for the principal amount of $93,000, interest, attorney's fees, costs, and any other damages allowed by law or equity. Plaintiffs alleged unjust enrichment, fraud, breach of contract, and other claims. After Garry Causey failed to answer the complaint, Plaintiffs received a default judgment against him on March 5, 2015.

The Court held a bench trial in this matter on February 1, 2016. After hearing the evidence, the Court found that Garry Causey

breached the contract and breached his fiduciary duties to Plaintiffs. The Court held him liable for $94,000, plus interest. Because Garry Causey failed to answer or appear, the Court entered a judgment of default against him. Further, the Court found that Karry Causey tacitly accepted the contract and committed a breach of contract. The Court held him liable to $15,780 to Plaintiffs, plus interest, *in solido* with Garry. The Court subsequently entered a Final Judgment, which stated:

> IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of Plaintiffs Josh and Jill Norris against Defendant Garry Causey in the amount of $94,000 and against Defendant Karry Causey in the amount of $15,780, jointly and severally to the extent of the $15,780. . . .
>
> IT IS FURTHER ORDERED that Plaintiffs are entitled to reasonable attorneys' fees and court costs. In accordance with Federal Rule of Civil Procedure 54(d)(2), Plaintiffs shall file a properly supported motion for attorneys' fees and costs within 14 days of the entry of this judgment.

(Rec. Doc. 56.) In compliance with the final judgment, Plaintiffs filed their Motion for Attorneys' Fees on February 12, 2016. Plaintiffs filed an additional Motion for a New Trial on February 23. Defendant Karry filed an opposition on March 1, 2016. Plaintiffs filed a Motion for Leave to File Reply, which this Court granted on March 8, 2016.

**PARTIES' ARGUMENTS**

**A. Motion for a Partial New Trial**

Plaintiffs filed a Motion for a Partial New Trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Plaintiffs argue that the Court erred in holding that Karry and Garry Causey were not solidarily liable for the entirety of the $94,000 judgment. Plaintiffs raise several bases for holding Defendants solidarily liable. First, Plaintiffs argue that joint venturers are fiduciaries, and that Garry and Karry breached their fiduciary duties by converting Plaintiffs' funds to their own uses. Further, Plaintiffs argue that the Joint Venture Agreement created a joint obligation for Defendants, meaning that Defendants owed just one performance to Plaintiffs but that neither was bound to render the entire performance. Plaintiffs also note that Defendants owned an undivided fifty-percent interest in the joint venture, arguing that this fact also renders them solidarily liable.

In addition, Plaintiffs argue that Karry and Garry's duties under the agreement were indivisible because the parties contemplated that their obligations would be indivisible. Thus, Plaintiffs claim another basis for holding Defendants solidarily liable. As an additional basis for imposing solidary liability, Plaintiffs point to Louisiana Civil Code article 2324(A), which states that those who conspire to commit an intentional act are

solidarily liable for damages caused by such act. Plaintiffs claim that Karry and Garry conspired to defraud them, and are thus solidarily liable.

Alternatively, Plaintiffs ask this Court to increase the total damages owed by Karry Causey to $16,780. Plaintiffs argues that they paid $1,000 directly to Karry for architectural plans. The Court's judgment awarded $94,000 total, representing the sum the Plaintiffs sent to Garry to invest in the properties. Plaintiffs contend that they are entitled to recover the additional $1,000 from Karry.

Defendant's opposition did not address the arguments raised in Plaintiffs' Motion for New Trial. Accordingly, this Court assumes that the motion is unopposed.

## B. Motion for Attorneys' Fees

Plaintiffs ask this Court to award reasonable attorneys' fees to Plaintiffs and against both Defendants as solidary obligors. First, Plaintiffs contend that an award of $56,991 is reasonable here, based on the ten factors recognized by Louisiana law. Plaintiffs' attorney George Fagan set a rate of $250 per hour, while their other attorney, Ross Molina, set a rate of $150 per hour. Three paralegals also worked on the case. The rate for each is $80 per hour. One additional attorney, Margaret Swetman, worked

on the case for a single day. Her rate is $200 per hour. Plaintiffs contend that these rates are reasonable.

Further, Plaintiffs request an award of costs and expenses. The Joint Venture Agreement provides that the prevailing party in an arbitration, suit, or proceeding shall be entitled to "all costs provided by law, all out of pocket costs of each and every type, including expert witness fees and investigation costs and expense. . . ." (Rec. Doc. 29-3, at 4-5). While the Court is typically limited to taxing costs in the categories set by United States Code, Title 28, Section 1920, Plaintiffs argue that the parties may contractually agree to incur costs not mentioned in the statute. Thus, Plaintiffs assert that they are entitled to all costs listed in Exhibit 3 to their motion.

Plaintiffs also argue that Defendants should be held solidarily liable for attorneys' fees and costs. Plaintiffs note that the Court rendered judgment against both Defendants for fees and costs. Plaintiffs blame both Karry and Garry for the amount of attorneys' fees incurred because Garry was an absent defendant and because Karry refused to engage in settlement discussions and failed to make a settlement offer. Plaintiffs also contend that Karry and Garry conspired to convince Plaintiffs to participate in the joint venture, making them solidarily liable under Louisiana Civil Code article 2324(A). In addition, Plaintiffs argue that

7

Defendants should be solidarily liable because Karry, the less culpable party, will be entitled to seek contribution from Garry, thus lessening any potential inequities.

Finally, Plaintiffs seek post-judgment interest on the award of fees and costs. Because the Joint Venture Agreement did not provide an interest rate for attorneys' fees, Plaintiffs argue that they are entitled to post-judgment interest pursuant to United States Code Title 28, Section 1961.

Defendant Karry Causey filed an opposition, arguing that he should not be liable for attorneys' fees and costs incurred in locating and serving Garry Causey. Karry Causey claims that he cooperated in Plaintiffs' attempts to find and serve Garry and that he shouldn't be responsible for the fees and expenses spent in doing so. Further, Karry Causey argues that he should not be held solidarily liable with Garry. He notes that the Court found him to be liable for $15,780 out of the total damages, in solido with Garry to the extent of the $15,780.Thus, Karry argues that he should only be held liable for a similar percentage of the attorneys' fees and costs. By his calculations, this percentage is fourteen percent.

In their reply, Plaintiffs first argue that their right to attorneys' fees and costs arises from contract, not from statute. Because the parties agreed that the prevailing party would receive

attorneys' fees, Plaintiffs contend that Defendant's appeals to equity are misplaced. Further, Plaintiffs argue that the Defendants should handle any division of the attorneys' fees and costs between themselves in an action for contribution, without involving Plaintiffs. Finally, Plaintiffs assert that Louisiana law does not support Karry Causey's request to divide fees and costs proportionally according to the Court's judgment.

## LEGAL STANDARD

**A. Motion for New Trial**

A motion for new trial that substantively challenges a judgment and that is filed within twenty-eight days[1] of the judgment of dismissal is treated as a motion to alter or amend the judgment under FEDERAL RULE OF CIVIL PROCEDURE 59(e). *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 288 (5th Cir. 1989); *see also Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 669-70 (5th Cir. 1986) ("[A]ny motion that draws into question the

---

[1] In *Forsythe*, the court stated that the motion must be filed within ten days. However, the time to file the motion has since been changed from ten days to twenty-eight days. *See* 2009 Amendments FED. R. CIV. PRO. 59(e) (West 2012).

correctness of a judgment is functionally a motion under Civil Rule 59(e), whatever its label."(internal citation omitted)).

Altering or amending a judgment under Rule 59(e) is an "extraordinary remedy" used "sparingly" by the courts. *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). A motion to alter or amend calls into question the correctness of a judgment and is permitted only in narrow situations, "primarily to correct manifest errors of law or fact or to present newly discovered evidence." *Id.; see also Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Manifest error is defined as "'[e]vident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evidence, and self-evidence.'" *In Re Energy Partners, Ltd.*, 2009 WL 2970393, at *6 (Bankr. S.D. Tex. Sept. 15, 2009) (citations omitted); *see also Pechon v. La. Dep't of Health & Hosp.*, No. 08-0664, 2009 WL 2046766, at *4 (E.D. La. July 14, 2009) (manifest error is one that "'is plain and indisputable, and that amounts to a complete disregard of the controlling law'") (citations omitted).

The Fifth Circuit has noted that "such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of

judgment." *Templet*, 367 F.3d at 478-79. Nor should it be used to "re-litigate prior matters that ... simply have been resolved to the movant's dissatisfaction." *Voisin v. Tetra Tech., Inc.*, 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010). Thus, to prevail on a motion under Rule 59(e), the movant must clearly establish at least one of three factors: (1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) a manifest error in law or fact. *Schiller*, 342 F.3d at 567; *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (to win a Rule 59(e) motion, the movant "must clearly establish either a manifest error of law or fact or must present newly discovered evidence").

**B. Motion for Attorneys' Fees**

The United States Court of Appeals for the Fifth Circuit uses a two-step analysis to calculate fee awards. *Hernandez v. U.S. Customs & Border Prot. Agency*, No. 10-4602, 2012 WL 398328, at *13 (E.D. La. Feb. 7, 2012) (Barbier, J.) (citing *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379 (5th Cir. 2010)). In the first step, the Court must calculate the "lodestar," which is accomplished "by multiplying the number of hours reasonably expended in the case by the prevailing hourly rate for legal services in the district." *Id.* (internal citations omitted).

In determining the number of hours billed for purposes of calculating the lodestar, the Court must "determine whether the

requested hours expended by . . . counsel were reasonable in light of the facts of the case and the work performed. The burden of proving the reasonableness of the hours expended is on the fee applicant." *Hernandez*, 2012 WL 398328, at *13 (internal citations omitted). The Court must also determine whether the records show that the movant's "counsel exercised billing judgment" and "should exclude all time billed for work that is excessive, duplicative, or inadequately documented." *Id.* at *14 (internal citations omitted).

In determining the hourly rates for purposes of calculating the lodestar, the Court must determine a reasonable rate for each attorney "at the prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Id.* (internal citations omitted). The burden is on the fee applicant to submit "satisfactory evidence that the requested rate is aligned with prevailing market rates." *Id.* (internal citations omitted).

Next, "the second step allows the Court to make downward adjustments, or in rare cases, upward adjustments, to the lodestar amount based upon consideration of the twelve *Johnson* factors." *Id.* The twelve *Johnson* factors are the following:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client;
(12) awards in similar cases.

*Johnson v. Ga. Highway Exp. Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

Courts apply "a strong presumption that [the lodestar] figure is reasonable." *Hernandez*, 2012 WL 398328, at *16. Nevertheless,

[T]he Court must still consider the twelve *Johnson* factors ... . Though the Court need not be "meticulously detailed" in its analysis, it must nonetheless articulate and clearly apply the twelve factors to determine how each affects the lodestar amount. The Court should give special consideration to the time and labor involved, the customary fee, the amount involved and the results obtained, and the experience, reputation, and ability of counsel. ... However, to the extent that a factor has been previously considered in the calculation of the benchmark lodestar amount, a court should not make further adjustments on that basis.

*Id.* (internal citations omitted).

The Court also has discretion to award reasonable costs to a prevailing party. *See* 28 U.S.C. § 1920. However, the Court "may only award those costs articulated in [S]ection 1920 absent

13

explicit statutory or contractual authorization to the contrary." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010) (internal citations omitted). The court has the discretion to determine what constitutes reasonable costs. *See Guity v. Lawson Envtl. Serv., LLC*, 50 F. Supp. 3d 760, 772 (E.D. La. 2014) (Barbier, J.). In addition, a district court has discretion to deny all costs and expenses when the party seeking the costs has not provided an itemized breakdown of the costs incurred and reasons for their necessity. *See Fogleman v. ARAMCO,* 920 F.2d 278, 286 (5th Cir. 1991).

In diversity cases, post-judgment interest is calculated at the federal rate, according to United States Code, Title 28, Section 1961(a). *Boston Old Colony Ins. Co. v. Tiner Associates Inc.*, 288 F.3d 222, 234 (5th Cir. 2002). "Interest shall be allowed on any money judgment in a civil case recovered in a district court. … Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

## DISCUSSION

### A. Motion for New Trial

Plaintiffs posit several theories for holding Defendants solidarily liable. To prevail on their motion, Plaintiffs must show that the Court manifestly erred in failing to hold Defendants solidarily liable. Obligations may be several, joint, or solidary. "When each of different obligors owes a separate performance to one obligee, the obligation is several for the obligors." La. Civ. Code art. 1787. "When different obligors owe together just one performance to one obligee, but neither is bound for the whole, the obligation is joint for the obligors." La. Civ. Code art. 1788. "An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee." La. Civ. Code art. 1794.

Several obligations are treated as separate obligations owed by each obligor. La. Civ. Code art. 1787. A joint obligation is treated as solidary if its object is indivisible. La. Civ. Code art. 1789. If its object is divisible, a joint obligation is treated as separate. *Id.* Thus, the Court has two potential bases for holding Defendants solidarily liable: (1) their obligations were joint and indivisible, or (2) their obligations were solidary. Each possibility will be discussed in turn.

15

### 1. Joint, indivisible obligation

"When different obligors owe together just one performance to one obligee, but neither is bound for the whole, the obligation is joint for the obligors." La. Civ. Code art. 1788. Here, Defendants did not owe just one performance to Plaintiffs. The Joint Venture Agreement describes Garry Causey's obligations as such: maintaining accounting records; identifying, negotiating, and facilitating the purchase of properties; negotiating with contractors and supply houses to obtain the best possible prices; and purchasing builders' risk insurance. Karry Causey's only duties under the agreement were serving as project manager on restoration projects and negotiating with contractors and subcontractors to ensure best pricing. The Defendants shared only one overlapping duty: negotiating with contractors. Thus, Defendants did not owe together just one performance. Their obligations under the agreement were several, not joint.

Even if Defendants' obligations were joint, they were divisible. "An obligation is divisible when the object of the performance is susceptible of division. An obligation is indivisible when the object of the performance, because of its nature or because of the intent of the parties, is not susceptible of division." La. Civ. Code art. 1815. Here, the object of Defendants' performances can easily be divided into parts. In fact,

the Joint Venture Agreement assigned Defendants separate, largely unrelated duties. Defendants' one shared duty, negotiating with contractors, could easily be divided between them. Furthermore, the evidence does not suggest that Defendants intended their obligations indivisible, either in the Joint Venture Agreement or elsewhere. The Court finds that Defendants' obligations were separate, not joint and indivisible. Therefore, Defendants are not subject to solidary liability on this basis.

### 2. Solidary obligation

The second basis for holding Defendants solidarily liable is a finding that their obligations were solidary. "Solidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent or from the law." La. Civ. Code art. 1796. "A failure to perform a solidary obligation through the fault of one obligor renders all the obligors solidarily liable for the resulting damages." La. Civ. Code art. 1800.

The Joint Venture Agreement does not provide that the Defendants shall be solidarily liable for their obligations. Therefore, they can only be liable in solido if solidarity arises from the law. Plaintiffs suggest that Defendants' status as joint venturers and fiduciaries renders them solidarily liable. However, Plaintiffs have not cited any cases to support this proposition,

17

and the Court could not find any. In fact, the Court found cases that suggest the opposite proposition is true. *See Thibaut v. Thibaut*, 607 So. 2d 587, 602 (La. Ct. App. 1992) (Defendants who breached fiduciary duties "cannot be held solidarily liable without a factual finding upon which solidarity liability can be based."). Therefore, a breach of fiduciary duty or a joint venture relationship does not automatically give rise to solidary obligations.

Plaintiffs argue that solidary liability arose as a matter of law according to Louisiana Civil Code article 2324(A). The article provides: "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." La. Civ. Code art. 2324(A). Plaintiffs did not introduce evidence of a conspiracy to defraud perpetrated by Defendants, and the Court made no such finding at the trial of this matter. Thus, the Court cannot hold Defendants solidarily liable under article 2324(A).

However, one potential basis for solidary liability exists. Louisiana courts hold that several obligors who individually breach their duties may become solidarily liable for the resulting damages. *See Theriot v. Bourg*, 691 So. 2d 213, 225 (La. Ct. App. 1997); *Sanders v. Zeagler*, 670 So. 2d 748, 760 (La. Ct. App. 1996), *rev'd in part on other grounds*, 686 So. 2d 819; *Stonecipher v.*

18

*Mitchell*, 655 So. 2d 1381, 1386 (La. Ct. App. 1995); *Standard Roofing Co. of New Orleans v. Elliot Const. Co.*, 535 So. 2d 870, 882-83 (La. Ct. App. 1988); *Town of Winnsboro v. Barnard & Burk, Inc.*, 294 So. 2d 867, 885 (La. Ct. App. 1974). A standard example involves:

> [A] contract, or contracts, made by an owner of an immovable with different parties related to the construction industry, such as architects, engineers, contractors, and experts in the testing of materials, for a certain building project. Upon breach, the owner may bring suit against all his co-contractants and, if they are found liable for damages, the question is whether their liability is solidary.
>
> To that question the French and Louisiana jurisprudence have given an affirmative answer based on a finding that each defendant contributed to causing the damage sustained by the plaintiff. Implied in those decisions is the reflection that, if sued for the specific performance of their original obligations, the defendant-obligors would no doubt be found severally bound, but that in a suit for damages the plaintiff is actually seeking to enforce a new and different obligation arising from breach of the contracts, a new obligation that is solidary for the defendants in breach.

5 La. Civ. L. Treatise, Law Of Obligations § 7.67 (2d ed.) (internal citations omitted). An early decision applying this principle relied in part on Louisiana Civil Code article 2762, which has been interpreted to provide that architects and other workmen will be solidarily bound for damages arising from breach of a construction contract. *See Town of Winnsboro*, 294 So. 2d at 885. However, courts have applied the same principle in other

contexts, including breach of ficuciary duty cases. *Theriot*, 691 So. 2d at 225.

An important caveat to the principle is that the defendants' combined fault must result in "a loss for which defendants would be liable for the whole." *Stonecipher*, 655 So. 2d at 1386. "It is the coextensiveness of the obligations for the same debt, and not the source of liability, which determines the solidarity of the obligation." *Id.* Therefore, the defendants' individual breaches of contract must combine and contribute "to cause the same item of damages" sustained by the plaintiff. *Id.* For example, in *Standard Roofing*, one defendant's shoddy construction work resulted in a leaking roof, while another's resulted in a wrinkled roof. 535 So. 2d at 882-83. The plaintiff requested damages to cover the costs of removing the roofing, repairing the deck, replacing the roof, paying a roofing consultant, painting the deck, as well as time related costs. *Id.* at 882. The court found that the cost of painting the deck could be attributed solely to the leaking roof. *Id.* Thus, the defendant that caused the roof to leak was solely responsible for those damages. *Id.* at 883. Because the other damages could be attributed to both the leaking roof and the wrinkled roof, the court held both defendants solidarily liable for the remaining damages. *Id.* at 882-83.

In the case at bar, Plaintiffs did not show that Defendants' breaches caused one item of damages. Plaintiffs showed that they paid $94,000 to Garry Causey and that Karry received $15,780 from Garry following this payment. Because of the parties' sketchy record-keeping, it is impossible to say whether Defendant's individual breaches caused the collective loss. Clearly, Garry's failure to perform caused the loss of the $94,000. Karry's contribution to the loss is less certain. As far as the Court is aware, Karry never received more than $15,980 from his brother in connection with the joint venture. The evidence introduced does not suggest that Karry was complicit in his brother's failure to return Plaintiffs' money. This Court finds that Defendant Karry Causey's breach of contract caused a loss of $15,780, while Garry Causey's breach of contract and breach of fiduciary duty caused a loss of $94,000. The Court finds that it does not manifestly err in holding Karry and Garry Causey solidarily liable for only $15,780 of the total damages and holding Garry individually liable for the remaining damages.

### 3. Alternative Arguments

Alternatively, Plaintiffs argue that their damages should be increased by $1,000, to account for the funds paid directly to Karry Causey for architectural plans. The Court awarded $94,000 total to Plaintiffs, which included the $48,000 and $45,000 paid

to Garry Causey, as well as the $1,000 paid to Karry. However, the Court only held Karry liable for the $15,780 that Garry transferred to him. The Court finds that it manifestly erred in failing to hold Karry Causey liable for the $1,000 paid directly to him. Therefore, the Court will amend its Final Judgment to hold Karry Causey liable for $16,780, in solido with Garry to the extent of the $16,780.

**B. Motion for Attorney's Fees**

The Court will address Plaintiffs' arguments for attorneys' fees, costs, and interest in turn. Finally, the Court will discuss whether Defendants should be held solidarily liable for fees and costs.

**1. Attorney's Fees**

As discussed above, the Court follows two steps in calculating an award of attorneys' fees. Each step will be discussed in turn.

**a. Lodestar Method**

In 2012 and in 2014, this Court found that in the Eastern District of Louisiana, a reasonable hourly rate for an attorney who had been practicing law for over eight (8) years and specialized in the field of law at issue was $300.00 per hour. *Gros v. New Orleans City*, No. 12-2322, 2014 WL 2506464, at *8 (E.D. La. June 3, 2014); *Hernandez*, 2012 WL 398328, at *14-16. The parties have not introduced evidence showing a change in market

22

conditions so as to justify an increase or decrease in the prevailing market rate. *See Kolb v. Colvin*, No. 13-5085, 2016 WL 258621, at \*3 (E.D. La. Jan. 21, 2016) (Brown, J.). Therefore, the Court will use this same reasonable hourly rate in determining the lodestar in this case.

"An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested." *In re Pool Products Distribution Mkt. Antitrust Litig.*, No. MDL 2328, 2015 WL 1183495, at \*4 (E.D. La. Mar. 13, 2015) (Vance, J.). Attorney Ross Molina charged a billing rate of $150 per hour. Mr. Molina has been practicing law in Louisiana for approximately eight years, since October 2008. In light of the reasonable hourly rate described above, Mr. Molina's rate is reasonable. Attorney George Fagan has over thirty-one years of legal experience. In this case, his rate was $250 per hour. Again, this fee falls well within the reasonable range. One other attorney, Margaret Swetman, also contributed to the case. Ms. Swetman has been practicing law since October 2004 and charged $200 per hour. This is a reasonable hourly rate.

Determining a paralegal's expenses is a two-step process. First, the Court must determine whether Plaintiffs can recover paralegal expenses in this case. Paralegal expenses are not

23

considered "costs." *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982). Such expenses may be recovered as part of an award for attorneys' fees, but only to the extent that the paralegal's duties consist of work traditionally done by an attorney. *Id.* Otherwise, paralegal expenses are "separately unrecoverable overhead expenses." *Id.* (citing *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 & n.1 (5th Cir. 1980)). Work traditionally performed by an attorney includes "digesting depositions, collating, marking and indexing exhibits, [and] preparing and arranging for service of subpoenas." *Selzer v. Berkowitz*, 477 F. Supp. 686, 691 (E.D.N.Y. 1979).

In this case, the paralegals performed work typically performed by attorneys. Paralegals communicated with process servers, corresponded with investigatory agencies tasked with locating Garry Causey, drafting notices of deposition, corresponded with opposing counsel concerning depositions, engaged in other correspondence relating to service and discovery, prepared discovery exhibits for production, set up depositions with court reporters, prepared subpoenas, called the tax assessor's office and sheriff's office, conducted online factual research, prepared exhibits to court filings, reviewed land records, prepared summaries of exhibits for trial, and prepared bench books. (*See generally* Rec. Doc. 58-5.) This work went beyond

merely clerical work, such as "reviewing the Court's deadlines and calendaring for the attorneys." *Action Oilfield Servs., Inc. v. Mantle Oil & Gas, L.L.C.*, No. 13-4866, 2014 WL 2465310, at *5 (E.D. La. June 2, 2014) (Barbier, J.). Therefore, the Court concludes that Plaintiffs may recover paralegal expenses.

Second, the Court must determine a reasonable rate for paralegals. In recent years, courts of this District have approved of paralegal rates ranging from $90 to $125 per hour, depending on experience. *See United States v. Russel Grillot, Grillot Constr., LLC*, No. 14-2539, 2015 WL 9672688, at *5 (E.D. La. Dec. 14, 2015) (Shushan, Mag.); *Offshore Marine Contractors, Inc. v. Palm Enrgy Offshore, LLC*, No. 10-4151, 2015 WL 5306229, at *3 (E.D. La. Sept. 10, 2015) (Vance, J.); *St. Joseph Abbey v. Castille*, No. 10-2717, 2015 WL 3444897, at *12 (E.D. La. May 27, 2015) (Duval, J.); *Kodrin v. State Farm Ins. Co.*, No. 06-8180, 2008 WL 294552, at *4 (E.D. La. Jan. 31, 2008) (Barbier, J.), *vacated on other grounds sub nom. Kodrin v. State Farm Fire & Cas. Co.*, 314 F. App'x 671 (5th Cir. 2009). Thus, the Court finds that the $80 per hour rate charged by paralegals in this case is reasonable.

After determining the reasonable rates, the Court reviews the records to determine whether Plaintiffs' counsel exercised billing judgment. *Hernandez*, 2012 WL 398328, at *14. Plaintiffs' counsel provided detailed billing statements, which this Court reviewed.

The attorneys' and paralegals' time was adequately documented and does not seem to be excessive or duplicative. Furthermore, Defendant does not oppose Plaintiffs' calculations. The Court finds that Plaintiffs' counsel exercised billing judgment with respect to the fees sought herein and that the hours expended on this matter were reasonable.

As calculated by the Court, Plaintiffs are entitled to the following attorneys' fees:

|             | Time Billed   | Hourly Rate      | Total Fees   |
|-------------|---------------|------------------|--------------|
| Mr. Fagan   | 69.00 hours   | $250 per hour    | $17,250.00   |
| Mr. Molina  | 247.10 hours  | $150 per hour    | $37,065.00   |
| Ms. Swetman | 2.30 hours    | $200 per hour    | $460.00      |
| Paralegals  | 27.70 hours   | $80 per hour     | $2216.00     |

The total amount of attorneys' fees is $56,991.00.

### b. *Johnson* Factors

As discussed above, these lodestar figures are presumptively reasonable, but the Court must nevertheless consider the twelve *Johnson* factors to determine whether they warrant a downward adjustment or, in rare cases, an upward adjustment.

### 1. Time and Labor Required

The Court finds that the lodestar amounts calculated above fairly account for the time and labor expended by each attorney in

this case, and so no upward or downward adjustment of the lodestar calculation is warranted based on this factor.

### 2. Novelty and Difficulty of the Questions

The Court finds that the issues in this case were not sufficiently novel or difficult to warrant an upward adjustment of the lodestar calculation.

### 3. Skill Requisite to Perform the Service Properly

The skill of each attorney is already accounted for in the lodestar calculations.

### 4. Preclusion of Other Employment

There is no contention in this case that the attorneys were precluded from taking other employment by virtue of the time and resources required to be expended in this case, and the Court therefore finds that this factor does not warrant an upward adjustment of the lodestar amount.

### 5. Customary Fee

The customary fees charged by each attorney are already accounted for in the lodestar calculations.

### 6. Fixed or Contingent Fee

The Court finds that this factor does not warrant an upward or downward adjustment of the lodestar amount.

### 7. Time Limitations Imposed by Client or Circumstances

The Court finds that there were no particular time limitations or constraints imposed on Counsel in this matter that would warrant an upward or downward adjustment.

### 8. Amount Involved and Results Obtained

Counsel for Plaintiffs partially achieved the results they sought, and this factor is already accounted for in the lodestar calculations.

### 9. Experience, Reputation, and Ability of Attorneys

The experience, reputation, and ability of each attorney is already accounted for in the lodestar calculations.

### 10. Undesirability of the Case

There is no contention in this case that the case was undesirable, and the Court therefore finds that this factor does not warrant an upward adjustment of the lodestar amount.

### 11. Nature and Length of Professional Relationship

There is no evidence that any attorney discounted his or her fees because Plaintiffs were longstanding clients, and so this factor does not warrant an upward adjustment from the lodestar amounts.

### 12. Awards in Similar Cases

This factor is neutral because the Court already considered recent awards of attorneys' fees in this district and took those awards into account when calculating the lodestar amounts.

Because it appears that none of the *Johnson* factors warrants an upward or downward adjustment from the lodestar amounts, the Court finds that the lodestar amount calculated – a total of $56,991.00 – is the correct award in this case.

### 2. Costs

Plaintiffs also requested an award of $1,745.53 in costs. The Joint Venture Agreement provides, "In any arbitration, suit, action, or proceeding between the parties . . . the prevailing party . . . shall be awarded in addition to damages, or other relief, all costs provided by law, all out of pocket costs of each and every type, including expert witness fees and investigation costs and expense, as well as all reasonable attorney's fees." (Rec. Doc. 29-3, at 4-5.) The language of the agreement reflects that Plaintiffs are entitled to indemnification for costs incurred in litigating the claims involved in this matter. As such, despite the limitations of Section 1920, the Court finds that Plaintiffs are contractually entitled to "reasonable costs" and expenses within the Court's discretion. Further, the Court finds that Plaintiffs' claimed costs are well-documented and reasonable. In

light of this fact and the fact that Defendant did not object to Plaintiffs' request for costs, the Court awards Plaintiffs the full amount of costs requested, $1,745.53.

### 3. Interest

The Joint Venture Agreement provided that any loans made to the joint venture would accrue interest at a rate of ten percent. (Rec. Doc. 29-3, at 3.) However, the parties did not stipulate the interest rate on an award for attorneys' fees and costs. Thus, interest will be calculated in accordance with United States Code, Title 28, Section 1961(a).

### 4. Solidary Liability and Division of Fees

Finally, the Court will address the issues raised by the parties concerning solidary liability and division of fees. Karry Causey argues that he should not be liable for fees incurred in locating and serving Garry Causey. The Court disagrees. The attorneys' fees and costs sought by Plaintiffs are the sole and direct result of Defendants' failure to honor their contractual duties. The Joint Venture Agreement specifically provides that a prevailing party who sued based on the agreement is entitled to "all costs provided by law, all out of pocket costs of each and every type, including expert witness fees and investigation costs and expense, as well as all reasonable attorney's fees." (Rec. Doc. 29-3, at 4-5.) Thus, Karry Causey has a contractual duty to reimburse Plaintiffs for

all attorneys' fees and other reasonable costs and expenses Plaintiffs have incurred as a result of being forced to litigate their claims.

Plaintiffs argue that Defendants should be held solidarily liable for fees and costs. The Court agrees. As addressed above, a solidary obligation may arise from separate breaches of contract that cause a single item of damages. *See, e.g.*, *Sanders*, 670 So. 2d at 760. Here, Defendants separately breached the same contract. To enforce their rights under the contract, Plaintiffs brought suit against Defendants, incurring attorneys' fees and costs in the process. Defendant Karry Causey defended the suit and refused to settle, forcing Plaintiffs to litigate the suit in court. Defendant Garry Causey failed to appear, and Plaintiffs were obligated to prove their case against him in order to receive a Judgment of Default. Thus, the Court finds that Plaintiffs' attorneys' fees and costs are a single item of damages attributable to the individual breaches of Defendants. Thus, Defendants are solidarily liable for attorneys' fees and costs.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Attorneys' Fees **(Rec. Doc. 58)** is **GRANTED.** Plaintiffs are awarded $56,991.00 in attorneys' fees and $1,745.53 in costs, bearing interest at the

rate provided for in Title 28, Section 1961(a). Defendants Karry Causey and Garry Causey are liable in solido for all costs, fees, and interest.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for a Partial New Trial **(Rec. Doc. 59)** is **GRANTED in part and DENIED in part**. The judgment against Karry Causey is increased to $16,780.00, in solido with Garry Causey to the extent of the $16,780. The Court's Final Judgment (Rec. Doc. 56) will remain the same in all other respects.

New Orleans, Louisiana this 16th day of March, 2016.


CARL J. BARBIER
UNITED STATES DISTRICT COURT