UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSH NORRIS, ET AL.                          CIVIL ACTION

VERSUS                                       NO: 14-1598

GARRY CAUSEY, ET AL.                         SECTION: "J" (4)

<u>**ORDER AND REASONS**</u>

Before the Court are two *Motions to Set Aside Judgment* (**Rec. Doc. 75; Rec. Doc. 76**) filed by Defendants, Garry Causey and Karry Causey, an *Opposition* thereto (**Rec. Doc. 87**) filed by Plaintiffs, Josh Norris and Jill Norris, and additional memoranda filed by Plaintiffs (**Rec. Doc. 97**) and Defendants (**Rec. Doc. 98; Rec. Doc. 99**). The Court heard oral argument on the motions on July 13, 2016. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motions should be **DENIED.**

<u>**PROCEDURAL HISTORY AND BACKGROUND FACTS**</u>

Plaintiffs Josh and Jill Norris are residents of the state of Michigan. Mr. Norris, a licensed plumber, traveled to New Orleans to seek work after Hurricane Katrina in 2005. In April 2007, Plaintiffs met Defendants, brothers Karry Causey and Garry Causey. The Causeys proposed an investment to Plaintiffs, in which Plaintiffs would supply funds to purchase hurricane-damaged

1

properties in New Orleans. The Causeys would then renovate the properties and sell them for a profit. The parties agreed to share the profits of their venture equally. In furtherance of this agreement, Garry Causey drafted a Joint Venture Agreement. Plaintiffs signed the agreement and returned it to Garry Causey. Karry Causey did not sign the agreement. Plaintiffs transferred a total of $93,000 to Garry Causey to purchase properties at 5103 Music Street and 4767 Marigny Street in New Orleans. They also paid $1,000 for architectural plans for the properties.

Despite Plaintiffs providing funds for the projects, the Causeys failed to move forward with the renovations. According to Plaintiffs, the Causeys told them that Garry Causey was unable to acquire additional funding for construction and materials. In the meantime, Plaintiffs had to pay monthly finance charges on their line of credit. The Causeys agreed to make monthly payments to Plaintiffs, but they stopped making payments after a few months. As a result, Plaintiffs initiated a Chapter 7 bankruptcy proceeding on September 10, 2009, in the Eastern District of Michigan. (Rec. Doc. 87-1.) After administering the bankruptcy estate, the trustee filed a final report on September 15, 2011. (Rec. Doc. 87-2.) In the report's "Individual Estate Property Record and Report," the trustee listed a "potential lawsuit regarding LA property" as an asset and estimated its net value to be $1,000. *Id.* at 3. The

2

report also stated that the potential lawsuit had been abandoned by the trustee pursuant to Title 11, United States Code, section 554(c). *Id.* After the original trustee's death, the second trustee, Kenneth Nathan, filed a final account and distribution report on May 15, 2012. (Rec. Doc. 87-3.) The report contained the same information on the "potential lawsuit" as the original trustee's report. *Id.* Finally, on June 19, 2013, the bankruptcy court closed the case. (Rec. Doc. 87-1.)

On July 10, 2014, Plaintiffs filed suit against Karry and Garry Causey for rescission of the joint venture agreement and asking for a judgment holding Defendants liable for the principal amount of $94,000, interest, attorneys' fees, costs, and any other damages allowed by law or equity. Plaintiffs alleged unjust enrichment, fraud, breach of contract, and other claims. After Garry Causey failed to answer the complaint, Plaintiffs received a default judgment against him on March 5, 2015. The Court held a bench trial in this matter on February 1, 2016. After hearing the evidence, the Court found that Garry Causey breached the contract and breached his fiduciary duties to Plaintiffs. The Court held him liable for $94,000, plus interest. Because Garry Causey failed to answer or appear, the Court entered a judgment of default against him. Further, the Court found that Karry Causey tacitly accepted the contract and committed a breach of contract. The Court

held him liable for $15,780 to Plaintiffs, plus interest, *in solido* with Garry.

The Court subsequently entered a Final Judgment. (Rec. Doc. 56.) After Plaintiffs filed a Motion for a Partial New Trial (Rec. Doc. 59), the Court amended the Final Judgment to increase the award against Karry Causey to $16,780. (Rec. Doc. 65.) The Court also awarded $56,991.00 in attorneys' fees and $1,745.53 in costs to Plaintiffs. *Id.* Karry Causey filed a notice of appeal on April 14, 2016. (Rec. Doc. 67.) Plaintiffs filed a Notice of Cross Appeal on April 26. (Rec. Doc. 68.) The appeal is currently pending before the Fifth Circuit Court of Appeals. Following the appeals, the bankruptcy trustee filed a motion to reopen the bankruptcy case to administer Plaintiffs' interest in the instant lawsuit. (Rec. Doc. 90-3.) Judge Mark Randon of the United States Bankruptcy Court for the Eastern District of Michigan granted the motion, noting that "it appear[s] that Debtors may have intentionally mislead [sic] the Court as to their assets and said asset appears to be an asset of the Debtor's Estate." (Rec. Doc. 90-4.) Subsequently, the trustee withdrew his final report. (Rec. Doc. 90-5.)

On June 2, 2016, Garry Causey filed the instant motion. (Rec. Doc. 75.) Karry Causey filed his motion on the following day. (Rec. Doc. 76.) Plaintiffs opposed both motions on July 5, 2016. (Rec. Doc. 87.) Plaintiff filed a motion for leave to file a supplemental

memorandum in opposition, which the Court granted on July 12. (Rec. Doc. 92.) The Court simultaneously granted leave for Defendants to file reply memoranda. *Id.* The Court heard oral argument on the motions on July 13, 2016. Following oral argument, the Court ordered the parties to file ten-page briefs on the issues arising from Plaintiffs' bankruptcy proceedings. The parties filed their briefs on July 20, 2016. (Rec. Doc. 97; Rec. Doc. 98; Rec. Doc. 99.)

## PARTIES' ARGUMENTS

In his motion, Garry Causey raises two grounds for relief under Rule 60(b). First, Garry Causey argues that Plaintiffs failed to properly effect service on him. Plaintiffs served Garry Causey at his Albuquerque, New Mexico address by posting the summons and complaint on the front door of the residence. However, Garry contends that he lived in Denver, Colorado, at the relevant time. Further, Garry contends that his wife, who resided at the New Mexico residence, refused service orally. She also returned a copy of the summons to Plaintiffs' counsel with the notation "Garry Causey does <u>not</u> reside at this address." Thus, Garry argues that Plaintiffs failed to properly effect service, rendering the judgment against him void.

Second, Garry Causey argues that Plaintiffs lacked standing to bring the instant action. Plaintiffs failed for Chapter 7

bankruptcy on September 10, 2009. Garry Causey contends that the bankruptcy trustee has exclusive standing to assert Plaintiffs' claims against the Causeys. According to Garry Causey, Plaintiffs failed to list their potential claims against Defendants in the schedules of their petition for Chapter 7 bankruptcy, even though the law required them to do so. Thus, Garry Casey argues that Plaintiffs' cause of action against Defendants became property of the bankruptcy estate. Because Plaintiffs lacked standing in this case, Garry Causey contends that the Court must set aside the final judgment.

In his motion, Karry Causey echoes the standing arguments raised by Garry. Karry Causey notes that he has already filed an appeal in the Fifth Circuit, which deprives this Court of jurisdiction and the ability decide a Rule 60(b) motion. However, Karry Causey argues that the Court can indicate if it would grant such a motion, and the Fifth Circuit can grant a limited remand of the case for the purpose of granting the motion.

Plaintiffs opposed both Rule 60 motions. Plaintiffs first argue that Garry Causey was properly served at the New Mexico residence. Plaintiffs claim they made a good faith effort to serve him in New Mexico and that their evidence indicated that the New Mexico address was his residence. Plaintiffs point out that they attempted to serve Garry Causey in Denver, but they suspect that

Garry was evading service. Further, Plaintiffs argue that the process server properly left the summons and complaint with Garry's wife, a person of suitable age and discretion who was residing at the New Mexico residence.

Second, Plaintiffs argue that the original bankruptcy trustee listed the potential lawsuit against the Causeys in his September 15, 2011 final report. Further, the trustee assigned an estimated value to the lawsuit, stated that the potential lawsuit had been "fully administered" and expressly abandoned the lawsuit to Plaintiffs pursuant to Title 11, United States Code, section 554(c). Plaintiffs note that no interested parties objected to the final report. Plaintiffs also note that the Court granted Karry Causey's counsel the opportunity to brief any "issues arising from Plaintiffs' bankruptcy proceedings." Karry's counsel failed to file such a brief and withdrew his bankruptcy-related arguments at trial. Plaintiffs also contend that Defendants attempt to raise the bankruptcy issue as an affirmative defense without specifically stating it in their answers. Finally, Plaintiffs seek leave of Court to file a motion to seek an additional award of attorneys' fees and costs based on Defendants' motions.

The parties filed additional briefs regarding the issues raised by Plaintiffs' bankruptcy. The Causeys raise similar arguments in their individual briefs. Defendants argue that

Plaintiffs failed to list their interest in the present lawsuit on their bankruptcy schedules. Garry Causey points out that Plaintiffs had an obligation to do so. Both Defendants argue that the bankruptcy trustee never abandoned the asset because Plaintiffs did not disclose it. While Plaintiffs argue that the trustee was aware of the potential claim, Karry Causey emphasizes that Plaintiffs are unable to provide any details about when they allegedly disclosed the claim to the trustee. Defendants argue that the trustee valued the claim at $1,000, even though Plaintiffs had given $93,000 to Garry Causey. According to Defendants, this disparity indicates that Plaintiffs concealed the value of the claim from the trustee. Because the trustee did not knowingly abandon the asset, Defendants argue that it remained the property of the bankruptcy estate. Thus, Defendants assert that the bankruptcy trustee is the real party in interest in this litigation.

    In their brief, Plaintiffs change track and argue that the trustee abandoned the lawsuit to them pursuant to section 554(a), instead of section 554(c). Section 554(a) provides that the trustee can abandon property to the debtors after notice and a hearing. However, Plaintiffs contend that the parties can waive the hearing if they are aware of the abandonment. Plaintiffs argue that the Court must consider whether the trustee exercised reasonable care

in deciding whether to abandon the asset. Further, Plaintiffs claim that the asset can be abandoned even if it is not formally scheduled, as long as the trustee's decision to abandon the asset was informed. Plaintiffs contend that their bankruptcy trustee made the informed decision to abandon the lawsuit to them at the close of the proceedings. Additionally, Plaintiffs point out that no creditors objected to the abandonment. Thus, they claim that the interest in the lawsuit irrevocably reverted to them.

Further, Plaintiffs argue that the trustee's reopening of the bankruptcy did not revoke the abandonment. Next, Plaintiffs contend that this Court lacks jurisdiction to determine whether the trustee revoked the abandonment. Rather, Plaintiffs claim that the Michigan bankruptcy court must make this determination. Nevertheless, Plaintiffs proceed to argue that the abandonment is not revocable. According to Plaintiffs, the only basis for revocation is Rule 60(b). However, Plaintiffs argue that Rule 60(b) relief is barred as untimely. Further, Plaintiffs claim that subsections (b)(4), (b)(5), and (b)(6) do not apply in this case.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure provides the standard for setting aside an entry of default or a default judgment. Rule 55 states, "The court may set aside an entry of default for good cause, and it may set aside a default judgment

9

under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) of the Federal Rules of Civil Procedure provides the limited circumstances under which a litigant may seek relief from a final judgment. Rule 60(b) provides that a court may reconsider an order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence which by reasonable diligence could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud, misrepresentation, or other misconduct;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged, or it is based on a prior judgment that has been reversed or vacated, or it is no longer equitable for the judgment to have prospective application; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Rule 60(b)(6), which provides that a court may act to relieve a party from a final judgment for "any other reason that justifies relief," is catch-all provision, meant to encompass circumstances not covered by the other specific grounds enumerated in subsections (1)-(5).

A district court has considerable discretion to grant or deny relief under Rule 60(b), and its decision will be reversed only for an abuse of discretion. *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005). A district court abuses its discretion only if it bases its decision on an erroneous view of the law or clearly erroneous assessment of the evidence. *Id.* However, the Court lacks discretion when the Rule 60(b)(4) motion is based on

10

a void judgment. *Recreational Prop., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986). "[T]he judgment is either void or it is not. . . . If a court lacks jurisdiction over the parties because of insufficient service of process, the judgment is void and the district court must set it aside." *Id.* (internal citations omitted). Courts consider two factors to determine whether a judgment is void under Rule 60(b)(4): (1) whether the court that rendered it lacked subject matter or personal jurisdiction and (2) whether the court "acted in a manner inconsistent with due process of law." *Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir. 1998).

Rule 60(b) relief is considered an extraordinary remedy, but courts must construe the rule "in order to do substantial justice." *Carter*, 136 F.3d at 1007. "The desire for a judicial process that is predictable mandates caution in reopening judgments." *Bailey v. Ryan Stevedoring Co.,* 894 F.2d 157, 160 (5th Cir. 1990) (quoting *Fackelman v. Bell,* 564 F.2d 734 (5th Cir. 1977)). Additionally, "[i]n the interests of finality, the concept of void judgments is narrowly construed." *Carter*, 136 F.3d at 1007 (citing *United States v. Boch Oldsmobile, Inc.,* 909 F.2d 657, 661 (1st Cir. 1990)). "Most circuits have interpreted Rule 60(b) quite narrowly, affording relief from final judgments only in the most specific circumstances." *Id.* at 1005.

## DISCUSSION

Both Defendants base their motions on Rule 60(b)(4). To succeed on a Rule 60(b) motion, the movant has the burden of showing initially "that his motion is timely, that he has a meritorious defense to the action, and that the opposing party would not be unfairly prejudiced by having the judgment set aside." *Id.* at 1005. In some cases, courts also require a threshold showing of "exceptional circumstances." *Id.* at 1005-06. In this case, a showing of timeliness is not required because "[m]otions brought pursuant to Rule 60(b)(4) . . . constitute such exceptional circumstances as to relieve litigants from the normal standards of timeliness associated with the rule." *Id.* at 1006. In the Fifth Circuit, such motions are not even subject to a "reasonable time" limit. *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 n.3 (5th Cir. 2003). Therefore, the Court finds that Defendants' motions were timely filed. However, the Court notes that neither Defendant made an initial showing of a meritorious defense or a lack of prejudice to Plaintiffs. Nevertheless, the Court will address Defendants' arguments for voidness.

## I.   Invalid Service of Process

The serving party bears the burden of proving valid service if service of process is challenged. *Conwill v. Greenberg Traurig, L.L.P.*, No. CIV.A. 09-4365, 2010 WL 2773239, at *3 (E.D. La. July

13, 2010) (citing *Sys. Signs Supplies v. U.S. Dept. of Justice, Washington, D.C.,* 903 F.2d 1011, 1013 (5th Cir. 1990)). A defendant cannot be held liable for failing to plead or defend unless service of process complies with Rule 4 of the Federal Rules of Civil Procedure. *Id.* (citing *Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 940 (5th Cir. 1999)). "Absent proper service of process, the court lacks jurisdiction over the defendant and an entry of default granted under such conditions is void." *Id.*

Rule 4 sets out the following rules for service of process on an individual within a judicial district of the United States:

> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> **(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> **(2)** doing any of the following:
>> **(A)** delivering a copy of the summons and of the complaint to the individual personally;
>> **(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>> **(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). In this case, the server could follow Louisiana state law—the state where the action was brought—or New Mexico state law—the state where the service was made. Fed. R.

Civ. P. 4(e)(1). Louisiana law allows for personal or domiciliary service of an individual. "Personal service is made when a proper officer tenders the citation or other process to the person to be served." La. Code Civ. Proc. art. 1232. Domiciliary service, which resembles Federal Rule 4(e)(2)(B), "is made when a proper officer leaves the citation or other process at the dwelling house or usual place of abode of the person to be served with a person of suitable age and discretion residing in the domiciliary establishment." La. Code Civ. Proc. art. 1234.

New Mexico follows similar rules for service of process. In general, "[p]rocess shall be served in a manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend." NMRA, Rule 1-004(E)(1). Personal service on an individual may be effectuated by delivery of a copy of the summons and complaint:

> (1)(a) to the individual personally; or if the individual refuses to accept service, by leaving the process at the location where the individual has been found; and if the individual refuses to receive such copies or permit them to be left, such action shall constitute valid service; or
>
> b) by mail or commercial courier service as provided in Subparagraph (3) of Paragraph E of this rule.
>
> (2) If, after the plaintiff attempts service of process by either of the methods of service provided by Subparagraph (1) of this paragraph, the defendant has

14

not signed for or accepted service, service may be made by delivering a copy of the process to some person residing at the usual place of abode of the defendant who is over the age of fifteen (15) years and mailing by first class mail to the defendant at the defendant's last known mailing address a copy of the process; or

(3) If service is not accomplished in accordance with Subparagraphs (1) and (2), then service of process may be made by delivering a copy of the process at the actual place of business or employment of the defendant to the person apparently in charge thereof and by mailing a copy of the summons and complaint by first class mail to the defendant at the defendant's last known mailing address and at the defendant's actual place of business or employment.

NMRA, Rule 1-004(F). Service under section F(2) is known as "substituted service" and is to be strictly construed. *See Houchen v. Hubbell*, 461 P.2d 413, 414 (N.M. 1969).

Garry Causey argues that the default judgment against him is void because he was not properly served pursuant to federal, Louisiana, or New Mexico law. The process server left a copy of the summons and complaint outside the Albuquerque residence after Garry Causey's wife refused to accept service. Garry Causey contends that this service was improper because he moved to Denver in April 2010, almost five years before Plaintiffs filed suit. Thus, Garry Causey argues that the process server did not leave the summons and complaint at his dwelling house or usual place of abode, as required by both Louisiana law and New Mexico law. Further, Garry Causey claims that posting the summons and complaint

on the door of the residence was insufficient because the server needed to physically hand the documents to his wife.

Plaintiffs argue that all evidence suggested that the Albuquerque residence was Garry Causey's dwelling house or place of abode. In support of their argument, Plaintiffs cite: (1) Karry Causey's testimony at trial stating that Garry Causey lives in Albuquerque (Rec. Doc. 85, at 15); (2) W-2 forms issued by Garry Causey's employer, Southwest Airlines, and submitted to the IRS in 2010, 2013, 2013, and 2014 listing Garry Causey's address as 10422 Cueva Del Oso NE, Albuquerque, New Mexico, 87111 (Rec. Doc. 87-4); (3) Bernalillo County property tax records for the Albuquerque residence listing Garry Causey and his wife, Karla Causey, as the owners in 2010, 2011, 2012, 2013, 2014, 2015, and 2016 (Rec. Doc. 87-5); (4) a quitclaim deed dated December 18, 2013 and a special power of attorney signed December 6, 2013, both of which identify Garry Causey as a "resident of the state of New Mexico" and identify the Albuquerque residence as his address (Rec. Doc. 87-5); (5) records from the Orleans Parish Tax Assessor stating that the Music Street property is currently owned by Garry and Karla Causey and giving their address as the Albuquerque residence (Rec. Doc. 87-6); and (6) in another lawsuit against Garry and Karry Causey in this District, the pre-trial order submitted on Garry Causey's behalf stating that he is "a major individual domiciled

16

in the State of New Mexico" (Rec. Doc. 87-9, at 2). Based on the foregoing evidence, Plaintiffs argue that they reasonably believed the Albuquerque residence was Garry Causey's usual place of abode and that their attempt to serve him there was proper.

First, the Court finds that the Albuquerque residence could be considered Garry Causey's dwelling house of place of abode at the time of service. The term "abode" refers to a place where a person lives. *Klumker v. Van Allred,* 811 P.2d 75, 78 (N.M. 1991). New Mexico law defines "the usual place of abode" as "the customary place of abode at the very moment the writ is left posted." *Vann Tool Co. v. Grace*, 566 P.2d 93, 95 (N.M. 1977). If the defendant moved in good faith, attempted service at his old place of abode is ineffective and invalid. *Id.* An intent to change the usual place of abode may be demonstrated by the fact that the defendant never returned to the former place to live. *Household Fin. Corp. v. McDevitt*, 505 P.2d 60, 62 (N.M. 1973). A divorce from a spouse who shared the former place of abode can also indicate the intent to change the place of abode. *Id.*

Similarly, Louisiana law provides that "once a domicile is acquired it continues until another has been established and the burden of proving the change of domicile rests upon the party who seeks to establish it." *Hornung v. Mills*, 7 So. 2d 665, 666 (La. Ct. App. 1942). In Louisiana, a domicile is "a person's . . .

17

principal establishment wherein he makes his habitual residence and essentially consists of two elements, namely residence and intent to remain in place. *Jefferson Cmty. Health Care Ctr., Inc. v. Roby*, 180 So. 3d 585, 588 (La. Ct. App. 2015). Federal courts follow similar principles but allow a person to have multiple dwelling places or abodes. *See Ali v. Mid-Atl. Settlement Servs., Inc.*, 233 F.R.D. 32, 36 (D.D.C. 2006). "[A]n individual may have more than one dwelling house or usual place of abode, provided each contains sufficient indicia of permanence. . . . When a Defendant does not have a permanent place of residence, a Court will consider whether he intended to return to the place of service in order to determine whether it can be characterized as his usual place of abode." *Id.* (internal quotation marks and citations omitted).

The Fifth Circuit has held that a plaintiff may rely on outward appearances when effectuating substituted or domiciliary service. *N.L.R.B. v. Clark*, 468 F.2d 459, 464 (5th Cir. 1972). "[W]ould-be process servers are not entirely at the mercy of elusive defendants." *Id.* When a defendant "has in fact changed his residence but to all appearances is still occupying a former dwelling, substituted service at the former dwelling is proper . . . ." *Id.* "A defendant who beclouds his whereabouts should not be entitled to benefit from the process server's consequent

confusion." *Id.* In this case, Garry Causey outwardly claimed the Albuquerque residence as his permanent address. Plaintiffs' evidence provides numerous examples of Garry Causey claiming to be a resident of New Mexico and of the specific address of the Albuquerque residence. Thus, Plaintiffs were entitled to reply on these outward appearances and effect service at the Albuquerque residence.

Second, the Court finds that the process server properly left the summons on the door of the residence after Garry Causey's wife refused service. New Mexico law "allows substituted service by delivering a copy to a person of sufficient age residing at 'the usual place of abode' of the defendant. If no such person be found willing to accept a copy, then service shall be made by posting on the defendant's premises." *Vann Tool Co.*, 566 P.2d at 94. Further, the serving party must mail the summons and complaint to the defendant's last known mailing address. *See Ortiz v. Shaw*, 193 P.3d 605, 610 (N.M. Ct. App. 2008). In this case, Garry Causey's wife refused service, so the process server posted the summons and complaint on the front door of the Albuquerque residence. (*See* Rec. Doc. 75-1, at 5.) Plaintiffs' counsel subsequently mailed a copy of the summons and complaint to Garry Causey's last-known address. (Rec. Doc. 87-10; Rec. Doc. 87-13.) Thus, Plaintiffs

complied with the New Mexico requirements for service, which satisfies Rule 4(e).

Further, the Court notes that Plaintiffs made a good faith effort to effect service in a way "reasonably calculated" to give Garry Causey "knowledge of the proceedings and an opportunity to be heard." *Clark*, 468 F.2d at 464; *see Sakallah v. Harahan Living Ctr., Inc.*, No. CIV.A. 05-5492, 2006 WL 2228967, at *2 (E.D. La. Aug. 2, 2006) ("In this case, even if the defendant was not at the door, he was either still in the house or returning shortly, and was therefore in close enough proximity that he would reasonably be calculated to know of the action against him. Therefore, the plaintiff has satisfied sufficient service of process under 4(e)(2).")While the record reveals that Garry likely had actual notice of the lawsuit, "due process does not require receipt of actual notice in every case." *Id.*

"Where the defendant receives actual notice and the plaintiff makes a good faith effort to serve the defendant pursuant to the federal rule, service of process has been effective.  Good faith efforts at service are effective particularly where the defendant has engaged in evasion, deception, or trickery to avoid being served." *Conwill*, 2010 WL 2773239, at *3 (quoting *Ali*, 233 F.R.D. at 36). Moreover, "The service of process is not a game of hide and seek. Where service is repeatedly effected in accordance with

20

the applicable rules of civil procedure and in a manner reasonably calculated to notify the defendant of the institution of an action against him, the defendant cannot claim that the court has no authority to act when he has willfully evaded the service of process." *Id.* (quoting *Ali*, 223 F.R.D. at 36). Even if service on Garry Causey did not strictly comply with federal, Louisiana, or New Mexico law, the Court finds that Plaintiffs acted in good faith to serve him, in a manner reasonably calculated to notify Garry Causey of the impending lawsuit.

## II.  Plaintiffs' Lack of Standing

Both Defendants argue that the bankruptcy trustee had exclusive standing to assert Plaintiffs' cause of action against them. Filing a bankruptcy proceeding creates an estate comprised of the debtor's property, including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. The phrase "all legal or equitable interests" includes any legal claims based on federal or state law. *In re Seven Seas Petroleum, Inc.,* 522 F.3d 575, 584 (5th Cir. 2008). A debtor is obligated to disclose all legal claims, both pending and potential. *Kane v. Nat'l Union Fire Ins. Co.,* 535 F.3d 380, 384-85 (5th Cir. 2008). The debtor must disclose a potential claim if he has enough information to suggest that he has such a claim, even if he does not know all of the underlying

21

facts or the legal basis of the claim. *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999). Further, "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "In the bankruptcy context, the bankruptcy trustee is the real party in interest with respect to claims falling within the bankruptcy estate. The bankruptcy trustee therefore has exclusive standing to assert undisclosed claims that fall within the bankruptcy estate." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir. 2014) (internal citations omitted).

In a Chapter 7 bankruptcy, undisclosed and unscheduled property remains the property of the estate, unless it is abandoned by the trustee pursuant to Title 11, United States Code, section 554, or administered in the bankruptcy proceedings. *Cargo v. Kansas City S. Ry. Co.*, 408 B.R. 631, 637 (W.D. La. 2009) (citing *Kane*, 535 F.3d at 385). "If a debtor does not schedule an asset that he or she is obliged to disclose, such as a pending or potential claim, and the trustee later learns that such an asset exists, he or she may reopen the bankruptcy to administer the claim on behalf of the creditors." *Id.* Once an asset becomes a part of the estate, the debtor's rights in the asset are extinguished unless the trustee abandons the asset pursuant to section 554. *Id.* Section 554 provides in pertinent part:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. . . .
>
> (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1)[1] of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350[2] of this title.
>
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554. In determining whether property is burdensome to the estate or of inconsequential value, the trustee must act in the best interest of the estate, rather than in the interest of the debtors or creditors. 4 WILLIAM L. NORTON, JR, & WILLIAM L. NORTON III, NORTON BANKR. L. & PRAC. 3D § 74:13 (2016).

In their additional brief filed July 20, 2016, Plaintiffs argue that the trustee in fact abandoned the lawsuit pursuant to section 554(a), not section 554(c), as they previously claimed.

---

[1] Section 521(a)(1) requires the debtor to file a schedule of assets and liabilities, unless the court orders otherwise. 11 U.S.C. § 521(a)(1)(B)(i).

[2] Section 350 provides,

> **(a)** After an estate is fully administered and the court has discharged the trustee, the court shall close the case.
> **(b)** A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

11 U.S.C. § 350.

Section 554(a) allows the trustee to abandon an asset after notice and a hearing. 11 U.S.C. § 554(a). However, a hearing is unnecessary if no creditor objects to the abandonment. 4 WILLIAM L. NORTON, JR, & WILLIAM L. NORTON III, NORTON BANKR. L. & PRAC. 3D §74:14 (2016) (citing *In re Nikokyrakis*, 109 B.R. 260, 261 (Bankr. N.D. Ohio 1989)). If the trustee makes an "informed, procedurally-correct" abandonment pursuant to section 554(a), the abandonment is irrevocable. *Tschirn v. Secor Bank*, 123 B.R. 215, 218 (E.D. La. 1991). In determining whether to abandon an asset, the trustee must act with reasonable care and due diligence. *See In re Melenyzer*, 140 B.R. 143, 154 (Bankr. W.D. Tex. 1992); 4 WILLIAM L. NORTON, JR, & WILLIAM L. NORTON III, NORTON BANKR. L. & PRAC. 3D § 74:3 (2016). The party seeking to prove section 554(a) abandonment carries the burden of proof. *In re Heil*, 141 B.R. 112, 114 (Bankr. N.D. Tex. 1992).

In this case, Plaintiffs failed to introduce evidence showing that the trustee abandoned the lawsuit pursuant to section 554(a). Plaintiffs argue that the trustee learned of the claim against the Causeys at some point between November 2009, when Plaintiffs filed their amended schedule, and September 2011, when the trustee filed his final report. Plaintiffs filed three supplemental exhibits showing that the trustee was aware of the lawsuit in early 2010. (Rec. Doc. 100-1; Rec. Doc. 100-2; Rec. Doc. 100-3.) The trustee

claimed to be investigating the potential lawsuit. (Rec. Doc. 100-2; Rec. Doc. 100-3.) However, the evidence suggests that the trustee was not completely informed about the lawsuit. For example, the original trustee valued the lawsuit at $1,000, but Plaintiffs sued for the $94,000 they paid to the Causeys, plus additional damages. This suggests that the trustee was not aware of the true value of Plaintiffs' claim. Furthermore, the second trustee filed a motion to reopen the bankruptcy proceeding and withdrew his final report. (Rec. Doc. 90-3; Rec. Doc. 90-5.) In granting the motion to reopen the case, the bankruptcy judge noted that Plaintiffs may have deliberately misled the court. (Rec. Doc. 90-4.) Thus, the evidence suggests that the trustee did not make an informed decision to abandon the claim.

Further, the trustee's report specifies that he abandoned the interest in the lawsuit pursuant to section 554(c). Section 554(c) abandonment is called "technical" abandonment. 4 WILLIAM L. NORTON, JR, & WILLIAM L. NORTON III, NORTON BANKR. L. & PRAC. 3D § 74:3 (2016). Scheduled but unadministered assets are technically abandoned upon the closing of the bankruptcy case. 11 U.S.C. § 554(c). "The granting of a discharge does not effectuate an abandonment, nor does the mere filing of a 'no asset' report." 4 WILLIAM L. NORTON, JR, & WILLIAM L. NORTON III, NORTON BANKR. L. & PRAC. 3D § 74:14 (2016). Moreover, "[u]nscheduled or otherwise concealed assets are not

abandoned upon the closing of the case." *Id.* Unscheduled property remains in the estate pursuant to section 554(d), unless the court orders otherwise. 11 U.S.C. § 554(d). Thus, an unscheduled asset cannot be abandoned pursuant to section 554(c). *Kagan v. Swider*, No. CIV.A. 99-1503, 2000 WL 158329, at *4 n.16 (E.D. La. Feb. 10, 2000) ("The vast majority of courts have taken the statute at its word requiring an asset to be scheduled before it can be abandoned, regardless of the trustee's awareness of it.") (citing *Jeffrey v. Desmond,* 70 F.3d 183, 186 (1st Cir. 1995); *In re Pace,* 17, F.3d 395, *1 (9th Cir. 1994) (unpublished); *Vreugdenhill v. Navistar Int'l Transp. Corp.,* 950 F.2d 524, 526 (8th Cir. 1991); *In re Capozzi,* 229 B.R. 250, 251 (Bankr. S.D. Fla. 1999)).[3] Because such an asset cannot be abandoned, it remains a part of the bankruptcy estate. *Id.* at *4 ("[P]roperty never scheduled and/or that is not listed remains property of the estate and is not deemed abandoned."). Section 554 requires formal abandonment because determining the trustee's intent to abandon can create difficult questions of fact. *See Stanley v. The Sherwin-Williams Co.*, 156 B.R. 25, 26 (W.D. Va. 1993). If the formal procedures—including

---

[3] The Eleventh Circuit also recognizes that an unscheduled asset cannot be technically abandoned. *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004).

scheduling—are not followed, the Court must find that the asset was not technically abandoned. *See id.*

In this case, Plaintiffs failed to list their interest in the instant suit in their voluntary petition. (Rec. Doc. 75-2.) Plaintiffs filed an amended Schedule B on November 25, 2009. (Rec. Doc. 75-5.) Again, they did not list their interest in this lawsuit. *Id.* On both schedules, they also failed to list their interest in the joint venture with the Causeys and their interest in the Music Street property. While the claim appeared on the trustee's final report, the Plaintiffs omitted it from their list of assets. Thus, regardless of the trustee's awareness of the claim, it could not be abandoned pursuant to section 554(c). Because this case involves a section 554(c) abandonment rather than a section 554(a) abandonment, Plaintiffs' failure to schedule their interest in this lawsuit is fatal to their claim. The asset was not scheduled, so it could not be abandoned pursuant to section 554(c). Therefore, the interest in the lawsuit never reverted to Plaintiffs. The trustee remains the real party in interest in this case for purposes of Rule 17(a).[4]

---

[4] Because the Court has determined that the interest in the lawsuit was never abandoned, the Court need not discuss whether the trustee revoked the abandonment by reopening Plaintiffs' bankruptcy proceedings.

However, this is not to say that the final judgment is void for lack of subject matter jurisdiction. Defendants' arguments confuse "jurisdictional standing under Article III of the United States Constitution, which would impact the court's subject matter jurisdiction, with the principle of real party in interest, which does not impact the court's subject matter jurisdiction." *Dunn v. Advanced Med. Specialties, Inc.*, 556 F. App'x 785, 789-90 (11th Cir. 2014). In *Dunn*, the Eleventh Circuit affirmed the district court's denial of a bankruptcy trustee's Rule 60(b)(4) motion. *Id.* at 790. As in this case, the trustee argued that the plaintiff lacked standing because the trustee had exclusive standing to assert the plaintiff's cause of action. *Id.* at 789. The Eleventh Circuit disagreed. *Id.* While it found that the trustee was the real party in interest pursuant to Rule 17(a), it decided that the district court's judgment was not void for lack of subject matter jurisdiction. *Id.* at 790. The court noted that it could simply substitute the trustee for the plaintiff as the real party in interest, even on appeal. *Id.* (citing *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1297 (11th Cir. 2003)).

Fifth Circuit jurisprudence conforms to the principles announced by the Eleventh Circuit in *Dunn*. The Fifth Circuit has noted, "The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the

28

person who will ultimately benefit from the recovery. The purpose of this provision is to assure a defendant that a judgment will be final and that res judicata will protect it from having to twice defend an action, once against an ultimate beneficiary of a right and then against the actual holder of the substantive right." *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) (quoting *Farrell Construction Co. v. Jefferson Parish, La.,* 896 F.2d 136, 140 (5th Cir. 1990)) (internal quotation marks and citations omitted).

While the trustee is the real party in interest in this case, the failure to join the trustee does not impact the court's subject matter jurisdiction. *See id.* at 308. In such a case, the Fifth Circuit holds that outright dismissal of the plaintiff's claim is inappropriate. *Id.* Rule 17 provides, "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3). The Fifth Circuit notes that "most courts have interpreted the last sentence of Rule 17(a) as being applicable only when the plaintiff brought the action in her own name as the result of an

understandable mistake, because the determination of the correct party to bring the action is difficult." *Wieburg*, 272 F.3d at 308. In *Wieburg*, the Fifth Circuit reversed the district court's dismissal of the plaintiff's action and remanded so the court could determine whether joinder of the trustee or ratification by the trustee were possible. *Id.* at 309.

In this case, Plaintiffs may have reasonably believed that they were entitled to bring their claims against Defendants because the trustee's final report stated that it abandoned the potential claim to them. Further, Plaintiffs waited until the bankruptcy court closed their case to proceed against Defendants. Thus, Plaintiffs' failure to join the trustee was likely a reasonable mistake. While the trustee is the real party in interest in this case, the failure to join the trustee does not deprive this Court of subject matter jurisdiction. Rather, the Court may simply substitute the bankruptcy trustee for the Plaintiffs in this case.[5] Because the Court had subject matter jurisdiction over this matter, the final judgment is not void. Therefore, Defendants' motions shall be denied.

---

[5] The trustee may file a motion to substitute in this Court, in the court of appeals, or in both courts.

**III. Attorneys' Fees and Costs**

Plaintiffs requested attorneys' fees and costs incurred in defending against the instant motions. While Plaintiffs did not specify the basis for their request, the Court has previously acknowledged that the Joint Venture Agreement entitles the prevailing party to recover attorneys' fees and costs. (*See* Rec. Doc. 29-3, at 4-5.) The contract provides,

> In any arbitration, suit, action, or proceeding between the parties arising out of or in connection with any of the terms, covenants, provisions, or agreements in this Agreement, the prevailing party . . . shall be awarded . . . all costs provided by law, all out of pocket costs of each and every type, including expert witness fees and investigation costs and expense [sic], as well as all reasonable attorney's fees.

*Id.* Therefore, the Court will allow Plaintiffs to file a supplemental motion to claim attorneys' fees and costs pursuant to the Joint Venture Agreement.

31

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Garry Causey's *Motion to Set Aside Judgment* **(Rec. Doc. 75)** is **DENIED**.

**IT IS FURTHER ORDERED** that Karry Causey's *Motion to Set Aside Judgment* **(Rec. Doc. 76)** is **DENIED.**

New Orleans, Louisiana this 25th day of July, 2016.


_____
CARL J. BARBIER
UNITED STATES DISTRICT COURT


The clerk is to serve:
Kenneth Nathan
29100 Northwestern Highway
Suite 310
Southfield, MI 48034